**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KRISTIN ORR, an individual,**

        **Plaintiff,**

vs.                                                                                            8:11-CV-973 (NAM/RFT)

**ALLIED INTERSTATE, INC., a Minnesota**
**Corporation; and JOHN AND JANE DOES**
**NUMBERS 1 THROUGH 10,**

        **Defendants.**
_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| Law Office of William F. Horn<br>188-01B 71st Crescent<br>Fresh Meadows, New York 11365<br>For Plaintiff | William F. Horn, Esq. |
| Hitchcock & Cummings, LLP<br>120 West 45th Street, Suite 405<br>New York, New York 10036<br>For Defendant Allied Interstate, Inc. | Christopher B. Hitchcock, Esq.<br>John W. Hans, Esq. |

**Hon. Norman A. Mordue, U.S. District Judge:**

### MEMORANDUM DECISION AND ORDER

**I.      INTRODUCTION**

      Plaintiff Kristin Orr filed a complaint alleging that Allied Interstate, Inc. ("Allied") and John and Jane Does numbers 1 through 10, defendants, committed violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 when they attempted to collect a debt discharged in bankruptcy and performed a "hard" inquiry on plaintiff's credit report without her "authorization or any

permissible purpose." Allied moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the basis that plaintiff's bankruptcy filing precludes these claims. Plaintiff opposes dismissal but requests that the Court refer this matter to United States Bankruptcy Court.

**II.    COMPLAINT**

According to the complaint:

Sometime prior to 2008, Plaintiff, allegedly incurred a financial obligation to Slm Financial Corp. in the form of a non-federal, private student loan ("Orr Obligation").
Slm Financial Corp. is also known as "Sallie Mae" and they are considered one entity . . . .
The Orr Obligation arose out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are for personal, family, and household purposes.
Allied contends that the Orr Obligation is in default.
The Orr Obligation is a "debt" as defined by the [FDCPA].
Plaintiff is . . . a "consumer" as that term is defined by [FDCPA].
Plaintiff . . . alleges, that sometime prior to 2008, the creditor of the Orr Obligation either directly or through intermediate transactions assigned, placed, transferred, or sold the debt to Allied for collection.
Allied collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. mail, telephone, and Internet.
Allied is . . . a "debt collector" as defined by [FDCPA].
Allied is . . . a "person" as defined by [FCRA].
In 2008, on or near the date Allied received the Orr Obligation for collection, Plaintiff decided to file for Chapter 7 bankruptcy. During her wait for residency, Allied commenced efforts to collect the Orr Obligation.
On November 3, 2008, Plaintiff noticed that Allied had conducted an inquiry on her credit report.
On November 10, 2008, Plaintiff received a first written communication from Allied, which was dated November 4, 2008, and which sought to collect the Orr Obligation. ("11/4/08 Letter").
The 11/4/08 Letter informed Plaintiff that she owed $,021.55, and that the debt was owe to "Slm Financial Corp."
The 11/4/08 Letter listed Plaintiff's assigned account number as "13328960."
. . . .
The 11/4/08 Letter is a "communication" as defined by the [FDCPA].

2

On November 15, 2008, Plaintiff sent Allied written letter in response to the 11/4/08 Letter a detailed cease and desist letter that also requested validation of the debt ("11/15/08 Letter").

To date, Allied never responded in any manner to the 11/15/08 Letter.

On February 2, 2009, Plaintiff called Allied and spoke with one of Allied's debt collector employees due to the fact that she had not received any response from Allied to the 11/15/08 Letter ("2/2/09 Conversation").

During the 2/2/09 Conversation Plaintiff informed Allied that she was planning to file for bankruptcy as soon as she met residency requirements, which would be in May 2009. The Allied debt collector responded to Plaintiff by repeatedly asking Plaintiff for her attorney's name, to which Plaintiff responded that she was filing her bankruptcy pro-se. The Allied debt collector responded to Plaintiff by stating that Allied would "not accept" a pro-se bankruptcy filing and that Plaintiff must provide Allied with the name of an attorney.

Subsequent to the 2/2/09 Conversation, Plaintiff called the Slm Financial Corp. A representative at the Slm Financial Corp. told Plaintiff that neither Slm Financial Corp. not Allied were allowed to collect the Orr Obligation during bankruptcy proceedings. The Slm Financial Corp. representative then provided Plaintiff with Allied's contact information and instructed Plaintiff to include Allied along with Slm Corp. in her anticipated bankruptcy proceeding.

On May 21, 2009, Plaintiff filed a petition for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Northern District of New York . . . .

Plaintiff's . . . bankruptcy petition expressly listed Allied, Slm Financial Corp., and Sallie Mae. . . as Creditors Holding Unsecured Nonpriority Claims including the Orr Obligation. In Plaintiff's bankruptcy petition the account number listed for the Orr Obligation was 13328960.

On May 23, 2009, a Notice of meeting of Creditors was sent by the Bankruptcy Court to all creditors listed in [the] petition - including, specifically, Allied, Slm Financial Corp., and Sallie Mae. A court employee, Joseph Speetjens, signed the certificate of service for the Notice under the penalty of perjury . . . .

On September 28, 2009, the U.S. Bankruptcy Court granted Plaintiff's . . . petition and accordingly entered an Order discharging all of her debts including the Orr Obligation, which was being collected by Allied. On September 30, 2009, the Court sent a copy of its discharge order to all of the creditors including Allied, Slm Financial Corp., and Sallie Mae . . . .

On May 17, 2011, Plaintiff discovered that Allied had performed yet another "hard" credit inquiry on her credit report subsequent to the discharge of her bankruptcy. At that time, a credit inquiry of Plaintiff's credit report explicitly revealed that the Orr Obligation had been discharged in bankruptcy.

On May 25, 2001, Plaintiff received a new collection letter from Allied in an attempt to collect the discharged Orr Obligation ("5/25/11 Letter"). The 5/25/11 Letter shows the creditor of the Orr Obligation as "Alm Financial Corp," and lists the new amount due as $3,654.06, and . . . reflects that the account number had been changed to 16195902.

3

> The 5/25/11 Letter is identical to the 11/4/08 Letter, with the exception of the account number and the amount owed.
> The 5/25/11 Letter is a "communication" as defined by [the FDCPA].
> At no time did Plaintiff ever grant Allied written permission to contact anyone or any credit reporting agency or to make inquiries into her credit report.
> At all times relevant to this action, Allied was aware of the discharged status of the Orr Obligation and, notwithstanding this knowledge, performed "hard" inquiries on Plaintiff's credit report without any permissible purpose for doing so.
> Plaintiff's creditworthiness has been repeatedly compromised by the acts and omissions of Allied's impermissible inquiries to her credit including, but not limited to a decrease in her credit score which in turn caused her not to qualify for a lower interest rate on her home mortgage.
> Allied and its employees knew it did not have a permissible purpose to pull Plaintiff's credit reports in violation of [the FCRA].
> The acts and omissions of Allied and its employees were willful, malicious, intentional and knowing, and in gross disregard for Plaintiff's rights and well-being.
> As a result of Allied's foregoing wrongful conduct, Plaintiff has suffered emotional damages including, but not limited to, humiliation, upset, anger, sleeplessness, anxiety, and mental anguish[.]

Paragraph numbers omitted. Emphasis in original.

The complaint contains three causes of action. The first cause of action alleges that defendants violated the FDCPA by sending plaintiff written communications in an attempt to collect the Orr Obligation even though defendants knew it had been discharged in bankruptcy and could not be collected. The second cause of action alleges that defendants negligently violated the FCRA by having credit inquiries placed on plaintiff's credit reports without her authorization or permissible purpose. The third cause of action alleges that defendants willfully violated the FCRA by having credit inquiries placed on plaintiff's credit reports without her authorization or permissible purpose.

## III. DISCUSSION

Defendant moves for judgment on the pleadings on the ground that the Bankruptcy Code precludes plaintiff's claims as a matter of law. Plaintiff responded to defendant's motion via

4

letter and states that her bankruptcy attorney filed a motion to reopen the bankruptcy proceeding so that she can file an adversarial proceeding against Allied. Citing *Diamonte v. Solomon & Solomon, P.C.*, No. 1:99CV1339, 2001 WL 1217226 (N.D.N.Y. Sept. 18, 2001), plaintiff asserts that referral of this matter to the Bankruptcy Court, not dismissal, is the appropriate course of action. In reply, defendant argues that because plaintiff's claims are precluded as a matter of law, she may not maintain an action in both courts.

### A.  Standard - Fed. R. Civ. P. 12(c)

On this Rule 12(c) motion to dismiss on the pleadings, the Court applies the standard applicable to a Rule 12(b)(6) motion for failure to state a claim. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). It is well established that "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). On a motion to dismiss under Rule 12(b)(6), the Court reviews the complaint to determine whether it has "facial plausibility" and pleads enough facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### B.  FDCPA

The crux of plaintiff's first cause of action, which contains a FDCPA claim, is that defendants attempted to collect a debt that had been discharged in a bankruptcy proceeding. Congress enacted the FDCPA with the purpose of eliminating "abusive debt collection practices by debt collectors . . . ." 15 U.S.C. § 1692(e). Among the practices it protects against is

5

misrepresentation of "the character, amount, or legal status of any debt." *Id*. § 1692e(2)(A). The Second Circuit explained that the "FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors." *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010). There is, however, "no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself." *Id*. According to the complaint, defendants violated a discharge order by attempting to collect a debt discharged in bankruptcy. "[T]he bankruptcy court is the appropriate forum to determine whether a creditor has, in fact, violated a discharge order". *Yaghobi v. Robinson*, 145 Fed.Appx. 697 (2d Cir. 2005). Indeed, "[w]here . . . a debtor thinks a creditor is acting in violation of a bankruptcy court's § 524 discharge order, relief is properly sought in the first instance from the bankruptcy court 'rather than in the district court, which only has appellate jurisdiction over bankruptcy cases.'" *Id*. (quoting *Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 121 (2d Cir. 2001). The Court concludes that the bankruptcy court is the proper forum for determining in the first instance whether defendants violated the discharge order. In the absence of a such a determination, an alleged violation of a discharge order fails to state a claim under the FDCPA on which relief can be granted.

**C.    Dismissal or Referral**

Plaintiff cites *Diamante v. Solomon & Solomon, P.C.*, No. 1:99CV1339, 2001 WL 121776 (N.D.N.Y. Sept. 18, 2001) for the proposition that instead of dismissing it the Court may refer this case to bankruptcy court for a determination of whether the debt on which the FDCPA claim is based was discharged in bankruptcy. The court's referral to bankruptcy court in *Diamante*, however, was done "with the parties' consent". *Id*. at *1. Further, after receiving the Report-

6

Recommendation from the bankruptcy court finding that the debt at issue had been discharged, the district court granted the defendant's motion to dismiss finding that "the Bankruptcy Codes precludes Plaintiff's FDCPA claim." *Id*. at *6.  Accordingly, plaintiff's request for referral is denied and defendants' motion to dismiss the FDCPA claim in the first cause of action is granted.

### D.     FCRA

Plaintiff's second and third causes of action allege, respectively, that defendants negligently and willfully failed to comply with § 1681b of the FCRA when they "had credit inquiries" placed on her credit reports without plaintiff's authorization or "any permissible purpose."  Defendant moves to dismiss this claim on the ground that plaintiff's FCRA claims are precluded by the Bankruptcy Code.  Although defendant asserts that "the same principle [that applies to FDCPA claims] extends to plaintiff's FCRA claim[s]" but cites no legal authority for this proposition. Moreover, a number of district courts have held otherwise*. See e.g., Hanks v. Talbots Classics National Bank*, No. C 12-2612 SI, 2012 WL 3236323, at *5 (Aug. 6, 2012) (finding that the Bankruptcy Code does not preclude a FCRA claim); *Henry v. Saxon Mortg., Inc.*, 2011 WL 5331679, at *3 (D.Ariz. Nov. 7, 2011) (finding that Bankruptcy Code precluded the plaintiffs' FDCPA claims but not their FCRA claim); *Wakefield v. Calvary Portfolio Servs.*, No. 06-CV-1066-BR, 2006 WL 3169517, at *2 (D.Or. Nov. 1, 2006) (finding that the Bankruptcy Code and FCRA could co-exist); *see also Elkins v. Equifax, Inc*., No. 06 C 0823, 2009 WL 632128 (N.D.Ill. Mar.9, 2009); *Purdue Employees, Federal Credit Union v. Van Houten*, No. 4:08-CV-45-AS-APR,2008 WL 4414712 (N.D.Ind. Sept.24, 2008).  In view of the above cases and because defendant has provided nothing but a conclusory argument to support its motion,

dismissal of plaintiff's FCRA claims at this point would be inappropriate.  Accordingly, defendant's motion to dismiss the second and third causes of action is denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss the first cause of action is granted; and it is further

**ORDERED** that the first cause of action is dismissed without prejudice; and it is further

**ORDERED** that defendant's motion to dismiss is otherwise denied in its entirety.

**IT IS SO ORDERED.**

Date: September 12, 2012

_____
Honorable Norman A. Mordue
U.S. District Judge